JAMES G. BAILIE, executor, plaintiff in error, *vs.* THOMAS J. KINCHLEY *et al.*, defendants in error.

| 52 | 487 |
|----|-----|
| 95 | 570 |

1. A will contained the following clause: "I direct all my just debts to be paid, and to enable this to be done, as well as for the purpose of managing and distributing my estate, my executors or the survivor, or the one that may qualify, are authorized to *sell, exchange or otherwise* dispose of, any portion or all of my estate." Testator was a cotton factor, and according to the testimony of one witness, one of the executors obtained money for the use and benefit of the estate from the defendant, and deposited certain notes belonging to the estate, of no greater value than the amount advanced, as collateral:

   *Held*, that the notes so pledged cannot be recovered by the other executor from the defendant who made the advance, if the jury credit the witness giving such testimony, and it was for the jury to decide where the testimony was conflicting.

2. It does not affect the right of the defendant, that the executor who received the money did not use it for the benefit of the estate he represented, provided the money was advanced in good faith.

3. Where one of the parties to the suit introduces in evidence the judgment of a court in some matter that may be relevant, it is not error for the court to permit the other to introduce the whole record, unless it appear that the other portion is irrelevant and may injure the party objecting.

4. Under section 4286, Code, this court cannot award damages in favor of a defendant in error who was also defendant in the court below in an action of trover, and who obtained a verdict only for costs.

Will.    Executor and administrator.    Collateral security. Evidence.    Practice in the Supreme Court.    Damages.    Before Judge GOULD.    City Court of Augusta.    November Term, 1873.

James G. Bailie, as executor of Harper C. Bryson, deceased, brought trover against Thomas J. Kinchley and John T. Shewmake, for certain notes hereinafter mentioned.    The defendants pleaded the general issue.

The facts of the case were as follows: On 3d June, 1872, James G. Bailie and William Bryson, the latter a son of testator, qualified as executors on the estate of Harper C. Bryson, whose will contained the following clause:

"I direct all my just debts to be paid, and to enable this to be done, as well as for the purpose of managing and distributing my estate, my executors hereinafter to be named, or the survivor, or the one that may qualify, are authorized to sell, convey, exchange, or otherwise dispose of, any portion or all of my estate."

Among the assets of the estate was a note (secured by mortgage) made by Joseph Moffatt, trustee, for $740 96, dated 4th September, 1871, and due 1st January, 1872, payable to H. C. Bryson or bearer, and a note made by said Moffatt, trustee, and Belia Moffatt, for $100 00, dated 4th September, 1871, and due at four months, payable to order of H. C. Bryson. After the maturity of these notes, to-wit: on or about the 29th November, 1872, these notes and the mortgage were turned over to Kinchley by William Bryson without any written transfer, as collateral security for the loan of $1,000. The capacity in which said loan and transfer was made is in dispute, and the evidence thereon conflicting, plaintiff contending that William Bryson, in such transaction, acted as an individual, and defendants contending that he acted as executor. William Bryson testified that he borrowed the sum of $1,000 00 from Kinchley in his individual capacity and not as executor; that the money obtained from Kinchley was not intended to be used for the benefit of the estate, and, in point of fact, was not so used, but was applied to his individual use; that witness was a member of the firms of C. A. Withers & Company, Savannah, Georgia, and of C. Campbell & Company, Augusta, Georgia, and that his main business at time of the loan was buying and selling cotton on account of said firms, and that the loan in question was procured by him as an individual and not as executor, and that he did not tell Kinchley the money was to be used for the estate, and, in point of fact it was not so used. That Harper C. Bryson was a cotton fac-

Bailie *vs.* Kinchley *et al.*

tor for many years, and his estate consisted in part of accounts due as cotton factor; that he does not think the check is in his handwriting, but thinks the note is; that he is not sure his note to Kinchley was given the same day the money was obtained or afterwards.

The following written evidence was introduced, to-wit: a note sent by William Bryson to said Kinchley, prior to the loan: "Enclosed I send you a check filled up for the amount which you can sign, if you will let me have the loan of the amount I ask for. You need have no fear of not getting the money when you want it. It will oblige me very much.

"W. B."

The check referred to is in the following words:

"AUGUSTA, GEORGIA, 29th November, 1872.
"Merchants' and Planters' National Bank, pay to check one thousand dollars ($1,000 00.)    THOS. J. KINCHLEY."

And the following note:

"AUGUSTA, GEORGIA, 29th November, 1872.
"$1,000 00.    Thirty days after date I promise to pay Thos. J. Kinchley, or bearer, one thousand dollars, value received.
"WM. BRYSON."

Letters testamentary granted to James G. Bailie and William Bryson 3d of June, 1872, by the ordinary of Richmond county.

Order of the ordinary of Richmond county, vesting the sole management of the estate in James G. Bailie, dated 9th April, 1873.

Clause of the will above quoted.

Petition of Caroline A. Bryson, a legatee, to have the executors of Harper C. Bryson removed, was introduced by defendant over the objection of plaintiff.

John T. Shewmake testified that he held the notes and mortgage in question at the time suit was commenced and at the present time, as attorney for Thomas J. Kinchley, and

that a proper demand had been made by plaintiff upon him for them before the commencement of this suit, and that he, as such attorney, and for himself, had refused to give them up.

Defendants introduced Thomas J. Kinchley, who testified as follows: William Bryson sent several times to him to borrow money, which he refused to loan; Bryson then came himself, and said he needed $1,000 00 to settle or collect a claim or account of the old man, meaning Harper C. Bryson ; an old customer owed an account and wanted a further advance, and Bryson could collect all if he could advance and take the man's cotton ; Bryson offered the cotton as security ; he then left and a little negro boy brought witness the note enclosing the check ; witness signed the check ; on getting the check back from the bank he saw no name on it but his own ; he then went to Bryson and said, he (witness) had no writing to show Bryson had got the money, and Bryson gave him his note as such writing ; witness told Bryson to take back the Moffatt notes and mortgage and pay him his money ; Bryson said to hold on to those securities, he would soon pay ; this was a day or so after witness signed the check ; the Moffatt notes were sent to witness by Bryson within less than an hour after witness signed the check; witness would not have loaned Bryson the $1,000 00 as an individual, or on his note.

A. F. Austin testified as follows: He was a clerk with William Bryson for several months prior to December 6, 1872, at which time he ceased to be in his employ ; his business was to keep his books; William Bryson's business was settling up the estate of H. C. Bryson, and doing some cotton business himself; Mr. Bryson handed him $1,000 00, and told him to credit Dr. Kinchley with it ; part of the money was used that day in the ordinary course of business ; remembers Dr. Kinchley's asking for his money, and William Bryson telling him to hold on to the papers, meaning the Moffat notes.

Joseph Austin testified that he succeeded A. F. Austin as clerk; that Mr. Bryson told him his business was winding up the estate of H. C. Bryson ; that William Bryson did

some cotton business of his own, but not much; that the bulk of the business was with old customers.

The jury found for the defendants. The plaintiff moved for a new trial upon the following grounds, to-wit:

1st. Because the court committed error in charging that William Bryson, as executor, had power, under the terms of the will of Harper C. Bryson, to dispose of the assets of said estate at private sale, or to borrow money for the use of said estate, as testified to by the defendant, and pledge the notes and mortgage for which suit was brought as security for the payment of such borrowed money.

2d. Because the court committed error in charging that if Thomas J. Kinchley acted in good faith in loaning the money to William Bryson, it made no difference whether or not the latter acted in good faith; thus making no discrimination between the representative and individual capacity of said William Bryson, whereby the jury were led to believe that if Kinchley, in good faith, loaned the money to William Bryson as an individual, and not as an executor, still Kinchley could retain the assets of said estate placed in his hands, as collateral security for such loan to William Bryson individually.

3d. Because, over objection of plaintiff's counsel, the court admitted in evidence a petition filed by Caroline A. Bryson in the court of ordinary, to have the executors of Harper C. Bryson removed, the same being irrelevant to the point in issue, and calculated to cloud the minds of the jury.

4th. Because the jury returned a verdict decidedly and strongly against the weight of the evidence, the testimony of William Bryson being supported by written evidence as well as the surrounding circumstances, and being rebutted alone by the testimony of Kinchley, a party in interest, as to the capacity in which the loan was made.

The motion was overruled, and plaintiff excepted.

When the case was called in the supreme court, counsel for Kinchley moved that ten per cent. damages on $840 96, the aggregate principal of the notes in controversy, be awarded him, on the ground that the writ of error was sued out for

delay only. The court disposes of this motion in the fourth head-note.

J. E. HARPER & BROTHER, for plaintiff in error.

SALEM DUTCHER, by brief, for defendants.

TRIPPE, Judge.

1. The terms used in the will conferring powers on the executors, were very strong and broad, to-wit: " I direct all my just debts to be paid, and to enable this to be done, as well as for the purpose of managing and distributing my estate, my executors, or the one that may qualify, are authorized to *sell, exchange,* or *otherwise dispose of, any portion* or all of my estate." These words are certainly as strong as those in the will, the construction of which arose in the case of *Mattox vs. Eberhart,* 38 *Georgia,* 581. As in that case, other features in the will were taken as aiding in the construction of the terms, "sell or exchange," so there are others which may be considered in this. Here there are the additional words, " or otherwise dispose of," " for the purpose of managing," etc. It was also proved that the testator was a cotton factor, and that the condition of his business probably required just such a transaction as this was with the defendant, to raise money. Indeed, the defendant testified that such an emergency did occur, and was the foundation of the arrangement that was made. We think the words of the will, the situation of the testator as to his business at his death, and the principle asserted in the decision of *Mattox vs. Eberhart, supra,* sustain the ruling of the court on this point. It is true, the testimony on the facts touching this question was conflicting. The defendant positively states them to be such as will support the verdict. It was for the jury to decide, and in such a case this court will not interfere unless a clear case of abuse of discretion is shown.

2. If the defendant acted in good faith in the matter, he is not responsible because the executor himself failed in his duty. A regular purchaser of property from the representative of an

estate, is not bound to see that the representative does not appropriate the money paid to his own use. Nor is one who pays him a debt, or otherwise legally deals with him, affected by the default of the executor or administrator, as to his action in reference to what may thus go into his hands.

3. Plaintiff introduced in evidence the judgment of the court of ordinary, which vested the sole management of the estate in the hands of the other executor, the plaintiff in error. This was after both had qualified and acted as such, and after the transaction had occurred which brought about this suit. The defendant offered the petition of the applicant (one of the legatees,) on which that order was granted. This was objected to by plaintiff and the objection overruled. We do not see how this could have damaged the plaintiff. Our attention waa called to nothing in it which could have that effect. Besides, it simply made the record complete as to the whole proceedings on which a judgment was founded.

4. Counsel for defendant in error urged in the argument that the defendant was entitled to damages under section 4286 of the Code. That section says : " Ten per cent. damages may be awarded by the supreme court upon any judgment for a sum certain, which has been carried to said court and there affirmed ; *provided,* in their opinion, the cause was taken up for delay only," etc. This was an action of trover. There was a general verdict for the defendant, for cost, without saying anything as to the purpose for which the case was brought here. This is not one in which damages can be given.

Judgment affirmed.